UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DAMIEN BOATWRIGHT,**

    Movant,

v.

    Case No. 8:23-cv-2910-MSS-TGW

    Crim. Case No. 8:22-cr-175-MSS-TGW

**UNITED STATES OF AMERICA,**

    Respondent.
_____/

**O R D E R**

Boatwright moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 1) The Court preliminarily reviews the motion and supporting memorandum (Doc. 2) for sufficiency. Rule 4(b), Rules Governing Section 2255 Proceedings.

Boatwright pleaded guilty to possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Crim. Doc. 85) The Court sentenced Boatwright to seventy-seven months in prison followed by two years of supervised release. (Crim. Doc. 85 at 2–3) In his Section 2255 motion, Boatwright cites *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and asserts that his conviction violates his Second Amendment right to bear arms and the equal protection clause. (Doc. 1 at 4)

When pleading guilty, Boatwright admitted that the following facts are true (Crim. Doc. 40 at 17–19):

> On February 3, 2022, Hillsborough County detectives observed Antwan Brown and Damien Boatwright as they entered the white Ford Escape near an apartment complex in the area of Fiftieth Avenue at Sligh Boulevard in Tampa, Florida. Detective Michael Fernandes of the Hillsborough Sheriff's Office was familiar with both Brown and Boatwright and recognized them from previous investigations. Detective Fernandes knew both

1

Brown and Boatwright to be convicted felons. Detective Fernandes observed Brown conduct suspected hand-to-hand narcotics transactions during surveillance.

Detective Fernandes observed Antwan Brown and Damien Boatwright enter a white Ford Escape. The vehicle left and began [to] travel along Fifty-Sixth Street North. During their travel, Brown commenced a live video over his known Instagram account, "oto.twan," which depicted Brown in a vehicle. This live video showed Brown brandish a firearm to the camera. During the video, Damien Boatwright is seen in the front passenger seat. Boatwright is then seen brandishing an extended magazine Glock firearm. Detective Fernandes observed the video live on Brown's social media page.

Based upon Brown, a convicted felon, and Boatwright, a convicted felon, brandishing firearms on the roadways of Hillsborough County, deputies conducted a traffic stop on the white Ford Escape. Brown was seated in the rear of the car. He was searched and found to have a holster in his waistband. Deputies located a Taurus nine-millimeter firearm, loaded with eighteen rounds of ammunition, in the rear of the car next to where Brown was seated in the vehicle. The Taurus and the eighteen rounds of ammunition were inspected by Special Agent Matthew Murray from [the Bureau of Alcohol, Tobacco, and Firearms], who determined the firearm and ammunition to have origins outside of Florida.

Deputy Cap removed Boatwright from the front passenger seat and located a Glock 26 under the front passenger seat. The pistol had an extended magazine and was loaded with twenty-five rounds of ammunition. Special Agent Murray inspected the Glock and the twenty-five rounds of nine-millimeter ammunition, and all items had origins outside of Florida.

Antwan Brown is a convicted felon from a Hillsborough County conviction on February 13, 2019, for charges of delinquent in possession of a firearm, possession of more than twenty grams of marijuana, and tampering with evidence.

Damien Boatwright is a convicted felon from a Hillsborough County conviction on June 1, 2021, for charges for aggravated assault with a deadly weapon and carrying a concealed firearm; Saint Lucie County conviction on March 24, 2020, for robbery, grand theft, and battery by a detainee; and a Charlotte County conviction on January 30, 2020, for grand theft.

Boatwright pleaded guilty on August 17, 2022 (Crim. Doc. 46), and the Court sentenced Boatwright on January 12, 2023. (Doc. 84) *Bruen* issued on June 23, 2022. Because Boatwright could have raised the equal protection claim and the Second Amendment claim based on *Bruen* before his guilty plea and on direct appeal, the claims are procedurally defaulted. *Seabrooks v. United States*, 32 F.4th 1375, 1383–84 (11th Cir. 2022). Even if not procedurally defaulted, the claims are meritless.

**Second Amendment Claim**

Boatwright asserts that Section 922(g)(1), which prohibits a felon from possessing a firearm, violates the Second Amendment as applied to his conviction. (Doc. 1 at 4) He contends that the prosecutor failed to comply with *Bruen* and demonstrate that a law prohibiting a felon from possessing a firearm falls within the country's history and tradition. (Doc. 2 at 5–10)

The plaintiffs in *Bruen* sued New York state authorities, who manage the state's firearm licensing laws, in a federal civil rights action. *Bruen*, 597 U.S. at 15–16. The plaintiffs asserted that the state authorities violated their Second and Fourteenth Amendment rights by denying their applications to carry a firearm for self-defense. *Bruen*, 597 U.S. at 15–16. State law required an applicant who wanted to carry a concealed firearm in public for self-defense to "'demonstrate a special need for self-protection distinguishable from that of the general community.'" *Bruen*, 597 U.S. at 12 (citation omitted).

*Bruen*, 597 U.S. at 10, held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." The opinion required that "the government [ ] affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S.

3

at 19. The opinion determined that New York's requirement violated the Second Amendment because the historical record "does not demonstrate a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense," and "historical tradition [does not] limit[ ] public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Bruen*, 597 U.S. at 38. The opinion concluded: "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents **law-abiding citizens** with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen*, 597 U.S. at 71 (bolding added).

In his concurrence in *Bruen*, 597 U.S. at 80–81 (Kavanaugh, J., concurring), joined by Chief Justice Roberts, Justice Kavanaugh clarifies that the majority opinion in *Bruen* does not hold that a law prohibiting a felon from possessing a firearm violates the Second Amendment:

> [A]s [*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008)], and [*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010)], established and the Court today again explains, the Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." Properly interpreted, the Second Amendment allows a "variety" of gun regulations. *Heller*, 554 U.S. at 636. As Justice Scalia wrote in his opinion for the Court in *Heller*, and Justice Alito reiterated in relevant part in the principal opinion in *McDonald*:
>
>> "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

After *Heller* but before *Bruen*, *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010), held that Section 922(g)(1) does not violate the Second Amendment. After *Bruen*, *United States v. Dubois*, No. 22-10829, 2024 WL 927030 (11th Cir. Mar. 5, 2024) (citations omitted), clarified that *Bruen* did not abrogate *Rozier*:

> To determine whether *Bruen* abrogates *Rozier*, we apply our prior-panel-precedent rule: "'a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.'" An intervening Supreme Court decision abrogates our precedent only if the intervening decision is both "clearly on point" and "clearly contrary to" our earlier decision. If the Supreme Court "never discussed" our precedent and did not "otherwise comment[ ] on" the precise issue before the prior panel, our precedent remains binding. To abrogate a prior-panel precedent, "the later Supreme Court decision must 'demolish' and 'eviscerate' each of its 'fundamental props.'" So, for example, if our precedent relied on "a line of Supreme Court precedents that the [Supreme] Court itself emphasizes in a later decision is not implicated by that later decision," the Supreme Court's intervening decision "cannot have" abrogated our precedent.
>
> *Bruen* did not abrogate *Rozier*. Because the Supreme Court "made it clear in *Heller* that [its] holding did not cast doubt" on felon-in-possession prohibitions, and because the Court made it clear in *Bruen* that its holding was "[i]n keeping with *Heller*," *Bruen* could not have clearly abrogated our precedent upholding section 922(g)(1). Indeed, the *Bruen* majority did not mention felons or section 922(g)(1).

Post-*Bruen*, other circuits agree that Section 922(g)(1) does not violate the Second Amendment. *United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) ("Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson."); *Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) ("Though *Bruen* created a new test for determining the scope of

5

the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons.").

Boatwright does not cite binding authority that supports his Second Amendment claim. *Range v. Att'y Gen. U.S.*, 69 F.4th 96, 106 (3d Cir. 2023), narrowly held that Section 922(g)(1) violated the Second Amendment when applied to a defendant who was convicted of a non-violent felony. The defendant in *Range* had a prior felony conviction for making a false statement to obtain food stamps. *Range*, 69 F.4th at 98. Boatwright has prior convictions for violent felonies, including aggravated assault with a deadly weapon, robbery, and battery. (Doc. 40 at 19) Consequently, *Range* does not support Boatwright's claim. Because Section 922(g)(1) constitutionally prohibited Boatwright, a felon with prior convictions for violent crimes, from possessing a firearm, his Second Amendment claim is meritless.

**Equal Protection Claim**

Boatwright asserts that Section 922(g)(1) violates the equal protection clause because federal prosecutors disproportionately charge African Americans and other minority groups with possession of a firearm by a convicted felon and other felony crimes. (Doc. 2 at 4–19) He contends that the prosecutor in his case charged him under a program called Project Safe Neighborhoods and cites statistics that show that federal prosecutors disproportionately prosecute African Americans under the program. (Doc. 2 at 15–19)

Boatwright's equal protection claim fails for the reasons explained in *United States v. Jordan*, 635 F.3d 1181, 1188–89 (11th Cir. 2011) (footnotes omitted):

> It is by now abundantly clear that under the Due Process Clause of the Fifth Amendment, "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Smith*, 231 F.3d at 807 (quotations omitted). In establishing that they are being selectively prosecuted in an unconstitutional manner, defendants

6

bear a "demanding" burden. *Id.* "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Id.* (quotations omitted). Consistent with ordinary equal protection standards, we require a showing "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* at 808 (quotations omitted). . . .

The discriminatory effect prong of this test requires that "similarly situated individuals were not prosecuted." *Smith*, 231 F.3d at 809. As we've explained:

> [A] "similarly situated" person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant — so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan — and against whom the evidence was as strong or stronger than that against the defendant.

*Id.* at 810. We have considered a comparison of the criminal histories of defendants to be relevant to the "similarly situated" inquiry. *See Quinn*, 123 F.3d at 1426. Accordingly, "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." *United States v. Bass*, 536 U.S. 862, 864 (2002) (mem.) (per curiam) (emphasis omitted). The discriminatory purpose prong requires that "the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 610 (1985) (quotations and alteration omitted).

The district court correctly denied Jordan's motion to dismiss for selective prosecution because, at the very least, he failed to establish discriminatory effect. As the record shows, Jordan was convicted of possession of a firearm and subject to the Armed Career Criminal Act sentencing enhancement under 18 U.S.C. § 924(e)(1), because he had been convicted of at least three prior qualifying convictions for purposes of the ACCA. In order to establish discriminatory effect, Jordan would have to present

7

> clear evidence that a similarly situated defendant of another race was treated differently than he. The data that Jordan submitted in his motion to dismiss showed only that African Americans account for approximately ninety-three percent of ACCA prosecutions in the Northern District of Georgia, while they account for significantly less than ninety-three percent of the general population or of the population of convicted felons who carry firearms. Jordan's data did not, however, include the criminal histories of the other defendants. As a result, his figures are not probative of the "similarly situated" inquiry of the discriminatory effect test. *See Bass*, 536 U.S. at 864; *Quinn*, 123 F.3d at 1426. Indeed, Jordan did not show that a single arrestee who was not prosecuted under the ACCA qualified for such prosecution, much less possessed a criminal history as substantial as his own. Therefore, he "has not presented 'some' evidence tending to establish selective prosecution," much less facts sufficient to create a reasonable doubt about the constitutionality of his prosecution. . . .

Boatwright fails to allege facts that demonstrate a discriminatory effect. He contends that prosecutors investigate and prosecute firearm crimes under Project Safe Neighborhoods only in urban areas with large populations of African Americans. (Doc. 2 at 15–17) He states that in the Eastern District of Michigan, ninety percent of the defendants prosecuted under Project Safe Neighborhoods are African American, in the Southern District of New York, eighty percent of the defendants prosecuted under the project are African American, and in Cincinnati, Ohio, ninety percent of the defendants prosecuted under the project are African American. (Doc. 2 at 18) Because Boatwright cites statistics concerning the percentage of African Americans prosecuted for firearm offenses in a particular geographic area and fails to identify similarly situated convicted felons of another race who possessed firearms but evaded prosecution, his equal protection claim fails. *Jordan*, 635 F.3d at 1188–89.

Accordingly, Boatwright's Section 2255 motion to vacate (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Boatwright, **DOCKET** a copy of this Order in the criminal action, and **CLOSE** this case.

## DENIAL OF A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Boatwright neither makes a substantial showing of the denial of a constitutional right nor shows that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on March 8, 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

9